DURHAM, APPELLANT, *v.* ANKA RESEARCH LIMITED,
APPELLEE; BURKET. ▮

[Cite as Durham v. Anka Research Limited (1978),
60 Ohio App. 2d 239.]

(No. C-77454—Decided October 25, 1978.)

*Mr. Richard L. Katz,* for appellant.
*Messrs. Rendigs, Fry, Kiely & Dennis,* and *Mr. Frederick Brockmeier,* for appellee.

BLACK, J. This appeal raises several questions about the statute of limitations for personal injury (R. C. 2305.10), the "saving clause" applicable when a person is out of state (R. C. 2305.15), and the suspension of the statute of limitations during the disability of an "infant" (R. C. 2305.16) whose age of majority is reduced by legislative action (R. C. 3109.01).

Plaintiff brought suit against Anka Research Limited

(Anka), the manufacturer of an intrauterine device which she claims was the cause of personal injuries. Her suit was dismissed on defendant's motion and on appeal she assigns three errors. The important dates are as herein set forth.

August 20, 1954, is the date of appellant's birth. She would become 18 years of age on her birthday in 1972, and 21 years of age on her birthday in 1975.

On December 1, 1971, appellant discovered that an intrauterine device, earlier inserted by Robert Burket, M. D., had become embedded and lodged in the wall of her uterus, causing pain and suffering and permanent injuries including loss of reproductive organs. The doctor had inserted the device in 1969, and he "removed" the device early in 1972. (The dismissal of the doctor as a defendant is not contested in this appeal.)

On January 1, 1974, the amendment to R. C. 3109.01, reducing the age of majority from 21 years of age to 18 years of age, became effective. Appellant was then 19 years, 4 months of age.

On December 18, 1975, appellant discovered that the device had not been fully removed and that 1.5 centimeters of it remained lodged in her uterus. (It was presumably later removed.)

On August 12, 1976, appellant filed her complaint against Anka, alleging (1) negligence in the manufacture and design of the devide and failure to warn, (2) breach of expressed and implied warranties of safety, merchantable quality and fitness for warranted use, and (3) the inherent defectiveness and unreasonable dangerousness of the device. The complaint was twice amended and while new causes of action were alleged against Dr. Burket (later dismissed with consent of appellant), the only changes in the allegations of the second amended complaint against Anka were the insertion of certain dates omitted earlier and the inclusion of a claim of joint liability with Dr. Burket (in Count Five). The later allegations did not change the nature of the claim against Anka. *Grooms* v. *Greyhound Corp.* (C.A. 6, 1961), 287 F. 2d 95; *Brown* v. *Cleveland Baseball Co.* (1952), 158 Ohio St. 1, *Kyes* v. *Pennsylvania R. R. Co.* (1952), 158 Ohio St. 362. The date on which the action was brought was, therefore, August 12, 1976.

On August 18, 1976, six days after the filing of the complaint, Anka was served by certified mail at its office in the state of New York, in conformity with the address listed for Anka in the complaint.

We conclude that the dismissal of the suit against Anka was in error for the reason set forth below.

Appellant's first assignment of error is not well taken. She claims that the reduction of the age of majority from 21 to 18 years is not applicable to her. We disagree because we concur with the conclusion of the Court of Appeals for the Fifth District as found in *Dickerson* v. *Ferrell* (1976), 53 Ohio App. 2d 160. That court held that a plaintiff who was underage at the time of a personal injury, but more than 18 years of age on January 1, 1974, must litigate his claim within two years after the effective date of the amendment to R. C. 3109.01. In the instant case, the cause of action arose on December 1, 1971, when appellant discovered the device had lodged in the uterine wall, but the statute was tolled from that moment until two years after she reached majority, under R. C. 2305.16.

Traditionally, the legislature has had the constitutional power to change the age of majority and to change the applicability of various statutes of limitation, provided that a person whose right to sue is thereby affected has a reasonable time within which to enforce the right. Appellant had a reasonable time in this case. We hold that she reached majority on January 1, 1974. Accordingly, unless the "saving clause" of R. C. 2305.15 applies in this case, appellant's right to enforce her personal injury claims terminated on January 1, 1976.

We find no merit in the second claim error which is that the lower court was wrong in ruling that appellant's cause of action arose more than two years prior to the commencement of her action. Appellant's causes of action accrued December 1, 1971, (the first discovery) and on December 18, 1975, (the second discovery). *Melnyk* v. *Cleveland Clinic* (1972), 32 Ohio St. 2d 198. The court below was correct insofar as it reached this conclusion. However, the applicability of the two-year statute on personal injuries is deferred by both the "disability" statute (R. C. 2305.16, discussed in the preceding

paragraph) and by the "saving" statute (R. C. 2305.15, discussed below).

The court erred, as appellant claims in her third assignment, in concluding that under R. C. 2305.15 a corporation is legally different from an individual and that the statute of limitations is not tolled by the absence of Anka from the state. Our conclusions are that the "saving" statute tolled the statute of limitations for the enforcement of claims against Anka so long as Anka had not "come into the state," that appellant's suit was commenced while the statute was tolled, that the action was not prohibited by the personal injury statute of limitations, and that Anka is now in the jurisdiction of the court for the purposes of this suit.

These conclusions are founded on several bases, the most important of which is our interpretation of *Seeley* v. *Expert, Inc.* (1971), 26 Ohio St. 2d 61, and its relationship to "long arm" service under Civ. R. 4.3. In that case, the Supreme Court ruled, in the third paragraph of the syllabus, that R. C. 2305.15 tolls the statute of limitations during the time an individual defendant is absent from the state despite the fact that substituted service could have been obtained on that defendant as a nonresident operator of a motor vehicle under R. C. 2703.20. The court reviewed the history of the judicial interpretation of R. C. 2305.15 and concluded that it must abide by the plain language used by the General Assembly and never amended. That language states, briefly, that:

"[W]hen a cause of action accrues against a person, if he is out of the state***the period of limitation***does not begin to run until he comes into the state***."

The fact that he is amenable to service because the court can acquire jurisdiction by substituted service does not change the clear legislative intent that the statute of limitations is tolled so long as he does not come into the state in person. As the Supreme Court said in *Seeley,* an opposite result would not have been illogical; that is, that the saving statute and the procedures for service could be deemed so interwoven that if a party is amenable to service, the statutes of limitation run. The legislature could have produced this result, but it did not. Instead it provided for the tolling of limitations until the foreign person "comes into the state," while at the same time it allowed substituted service on

nonresident drivers and concurred in the use of certified mail service on out-of-state parties as promulgated in Civ. R. 4.3. The tolling is caused by absence from the state, not by nonamenability to service. See the discussion of the "saving clause" in *Telley* v. *Turner Construction Co.*, unreported, First Appellate District, No. C-76008, decided March 30, 1977.

We are constrained to follow the Supreme Court's mandate in this case. The defendant herein is a corporation, and its amenability to service is through the provisions of Civ. R. 4.3 applying to out-of-state service, not R. C. 2703.20. Nevertheless, the word "person" in the saving statute clearly applies as well to corporations as to individuals, and long arm service on out-of-state parties is not, for purposes of the statutes of limitation, distinguishable from long arm service on nonresident drivers. Consistency and fairness require equal application.

The court below correctly concluded that the record before it was sufficient to infer that Anka was a foreign corporation nonamenable to personal service in Ohio. This inference arose from the New York address of Anka as set forth in the complaint and in the certified mail return receipt. Anka's motion to dismiss was on the grounds that the complaint discloses that appellant "failed to assert her cause of action within the applicable Statute of Limitations," but the motion was not supported by affidavits, nor was it disposed of as a motion for summary judgment (as is allowed under Civ. R. 12 [B]). The motion to dismiss was directed solely at the face of the complaint. [2] As the Supreme Court stated in

---

[2] The record before the trial court fails to "establish" the facts that Anka was a foreign corporation without license to do business in Ohio and not amenable to personal service in the state. Counsel for both appellant and appellee assumed that these facts were "established" in the record, but our search of the record discloses no document (such as, an affidavit or a stipulation of fact) that sets forth the exact status of Anka. All we have is Anka's New York address on the face of the complaint and in the certified mail return receipt. We can infer Anka's absence from the state from that address, for purposes of passing on a simple motion to dismiss under Civ. R. 12 (B), because it is logical to conclude that if Anka had an agent or employee in Ohio, service would have been made on him (her). (The fact that service was by certified mail does not assist us because that type of service is the preferred method whether within or without the state.) The granting of Anka's motion to dismiss was erroneous because the complaint on its face left open a possibility that the statute

*Mills* v. *Whitehouse Trucking Co.* (1974), 40 Ohio St. 2d 55, a motion to dismiss may be granted when the bar of the statute of limitations is apparent from the record—that is, when it is "clear on the face of a complaint that the cause of action is barred." Under these circumstances, a Civ. R. 12 (B) motion serves as a method for expeditiously raising the affirmative defense of the statute of limitations. But where the complaint suggests, as did appellant's, that the bar is not effective, then the burden of asserting the defense and proving it to be a bar remains on the defendant. As suggested in 4 Anderson's Ohio Civil Practice 79, Section 148.04, a defendant has five opportunities to raise the statute of limitations defense, four of which require the establishment of facts beyond those on the face of the complaint. We are not prepared to hold that the civil rules shift defendant's burden to plaintiff upon the mere filing of a motion to dismiss under Civ. R. 12 (B).

Accordingly, on the state of the record at this juncture, the tolling of the statute of limitations by the "saving clause" (R. C. 2305.15) as to appellant's claim against Anka remained in effect at the time when certified mail service was made on Anka. Accordingly, the dismissal of appellant's suit was in error. We reverse the judgment below and remand this cause for further proceedings.

*Judgment reversed.*

SHANNON, P. J., and BETTMAN, J., concur.

---

was tolled. A motion to dismiss may be granted only when the complaint allows no other possible conclusion. See, *Conley* v. *Gibson* (1957), 355 U. S. 41. Compare the pre-rule cases of *Baughman* v. *Hower* (1937), 56 Ohio App. 162, and *Baumann* v. *Mangold* (1929), 32 Ohio App. 419, in both of which it was held error to sustain a demurrer on grounds of the bar of the statute of limitations when the bar was not conclusively disclosed by the face of the petition.