[Cite as *Reo v. Lindstedt*, 2020-Ohio-6674.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| BRYAN ANTHONY REO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NOS. 2019-L-073**<br>**2019-L-074** |
| MARTIN LINDSTEDT, et al., | : | |
| Defendant-Appellant. | : | |

Civil Appeals from the Lake County Court of Common Pleas, Case Nos. 2015 CV 001590 and 2016 CV 000825.

Judgment: Affirmed.

*Bryan Anthony Reo*, pro se, 7143 Rippling Brook Lane, P.O. Box 5100, Mentor, Ohio 44060 (Plaintiff-Appellee).

*Martin Lindstedt*, pro se, 338 Rabbit Track Road, Granby, Missouri 64844 (Defendant-Appellant).


THOMAS R. WRIGHT, J.

{¶1} Appellant, Martin Lindstedt, appeals the trial court's decision entering a jury verdict against him and in favor of appellee, Bryan Anthony Reo. We affirm.

{¶2} In 2015, Reo filed suit against Martin Lindstedt and his corporation, the Church of Jesus Christ Christian/Aryan Nation of Missouri (the church) asserting claims for defamation and invasion of privacy, among others. Reo's claims were originally asserted in two different complaints in separate courts but were eventually consolidated.

The lawsuit stems from Lindstedt's ongoing internet harassment of Reo. Lindstedt and the church counterclaimed, and the trial court subsequently ordered Lindstedt not to represent the church, a corporate entity, or pursue claims on its behalf since Lindstedt is not a licensed attorney. Thereafter, Reo secured a default judgment against the church with the court holding damages, if any, in abeyance until trial.

{¶3} The case eventually went to trial, and at the close of evidence, the trial court narrowed the claims to be decided by the jury based on the evidence. Four of Reo's claims remained, and one of Lindstedt's claims went to the jury.

{¶4} On June 26, 2019, the jury rendered a verdict in Reo's favor against Lindstedt and the church on two counts; it did not find in Reo's favor on his remaining two counts. The jury found in Reo's favor on Lindstedt's counterclaim. The court entered judgment July 1, 2019 setting forth the jury award and ordering Lindstedt and the church to pay damages and court costs. Lindstedt filed two notices of appeal, which were consolidated.

{¶5} Lindstedt's first of nine assigned errors contends:

{¶6} "The trial court 'erred' in that the Lake County Court had no jurisdiction to even try the case because it lacked jurisdiction to try the case involving internet disputes between non-white white supremacist limited-purpose public figure Bryan Reo and Pastor Lindstedt and Pastor Lindstedt's Church of Jesus Christ Christian/Aryan Nations of Missouri residing 900 miles away with vastly different racial and political views living in Southwestern Missouri. Ohio Civ.R. 3(B)(7) and Civ.R. 4.3(A)(9) [T.d. 200, #15CV001590, Order denying New Trial 15 Oct. 2019] and Bryan Reo in its initial civil

2

complaint [T.d. #2 18 Sept. 2015] claimed that Kauffman Racing Equipment., L.L.C., v. Roberts,126 Ohio St.3d 81 grants his local county court in Lake County jurisdiction."

{¶7} Lindstedt challenges the court's jurisdiction to hear the case because he is a Missouri resident who was sued in Ohio. Reo opposes arguing the trial court had personal jurisdiction over Lindstedt and that regardless, Lindstedt waived the issue by filing an answer and counterclaim.

{¶8} Civ.R. 12(H)(1) *Waiver of Defenses and Objections* states:

{¶9} "A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (a) if omitted from a motion in the circumstances described in subdivision (G), or (b) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(A) to be made as a matter of course."

{¶10} Here, Lindstedt properly preserved the defense of lack of personal jurisdiction by asserting it in his amended answer and raising it throughout the course of the proceedings. *Natl. City Commercial Capital Corp. v. Page*, 12th Dist. Butler No. CA2005-09-381, 2009-Ohio-1161, ¶ 17.

{¶11} Notwithstanding, Lindstedt, as the appellant, bears the burden of demonstrating reversible error on appeal. *Davis v. Wesolowski*, 2020-Ohio-677, 146 N.E.3d 633, ¶ 29 (12th Dist.). It is not our duty "to develop an argument in support of an assignment of error." *Children's Hosp. Med. Ctr. v. S. Lorain Merchants' Assn.*, 9th Dist. Summit No. 22881, 2006-Ohio-2407, ¶ 6, citing *Prince v. Jordan,* 9th Dist. No. 04CA008423, 2004-Ohio-7184, ¶ 40. Lindstedt fails to lay out the facts and law

3

necessary for our disposition of this assignment and instead sets forth conclusory statements without legal authority or references to the record.

{¶12} App.R. 16(A)(7) requires an appellant's brief to include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."

{¶13} "Unsupported legal conclusions do not demonstrate error." *In re Complaint of Toliver v. Vectren Energy Delivery of Ohio, Inc.*, 145 Ohio St.3d 346, 2015-Ohio-5055, 49 N.E.3d 1240, ¶ 30. Because this contention is unsupported, we will not construct this argument for him. *Byers DiPaola Castle v. Ravenna City Planning Comm.*, 11th Dist. Portage No. 2010-P-0063, 2011-Ohio-6095, ¶ 35 (disregarding conclusory arguments unsupported in appellant's brief).

{¶14} Furthermore, Lindstedt did not move to dismiss on this basis before or during trial. Lindstedt did, however, include this as one ground for summary judgment in his September 2018 motion, but his summary judgment motion also lacks a cogent legal argument and evidence in support. The trial court overruled his motion December 17, 2018. Nevertheless, a defendant asserting an affirmative defense has the burden to establish the defense. *MatchMaker Internatl., Inc. v. Long*, 100 Ohio App.3d 406, 408, 654 N.E.2d 161 (9th Dist.1995), citing *Dykeman v. Johnson*, 83 Ohio St. 126, 135, 93 N.E. 626 (1910). And a party moving for summary judgment likewise has the initial burden "of informing the court of the basis for the motion and identifying those portions of the record which support his or her claim." *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997).

4

{¶15} Although Lindstedt preserved the issue, he failed to establish the legal and factual basis for the defense at trial and on appeal.  Accordingly, the trial court did not err in denying his summary judgment on this basis, and Lindstedt's first assigned error lacks merit.

{¶16} Lindstedt's second assigned error alleges:

{¶17} "The trial court 'erred' in that while [the trial] Judge * * * has this item as #5 in his Opinion: and Judgment Entry of 15 Oct. 2019 about the biased jury with the forced female African juror. Pastor Lindstedt tried to remove this African female from the jury pool by cause and pre-emptory challenges. Also, the jury was far different in belief and composition than a jury from Southwest Missouri. Yet the judge forced this African female upon Pastor Lindstedt nevertheless while allowing Bryan Reo to remove any suspected racists more in line with Bryan Reo's and [the trial] Judge['s] * * * prejudices. (T.d. 200, page 2 & 3. Batson v. Kentucky 476 U.S. 79 extended to prevent white supremacist pastors and their co-defendant churches from getting a fair trial.)"

{¶18} Lindstedt argues the trial court erred in not permitting him to exclude a juror based on her race.  Because he is a white supremacist, Lindstedt claims that any non-white juror should have been removed.

{¶19} The following exchange occurred during trial:

{¶20} "MR. LINDSTEDT:  * * * I don't think the African * * * I want to * * * essentially because she's black, I don't want her.

{¶21} "* * *

{¶22} "THE COURT: Mr. Lindstedt is asking to excuse Juror No. 4, who's the only African American in our whole jury pool. The only reason he has provided is her race. * * * I am not going to allow you to use a peremptory challenge on her.

{¶23} "* * *

{¶24} "MR. LINDSTEDT: I'm pointing out that white supremacists in Lake County are few and far between, so I guess I have made a peremptory and you denied it.

{¶25} "THE COURT: Right."

{¶26} The only authority Lindstedt cites in support of this argument is *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). However, *Batson* does not hold that a white supremacist litigant can use a peremptory challenge to remove a black juror based on their race. To the contrary, it prohibits such conduct and holds in part that the Equal Protection Clause forbids challenges to potential jurors on account of their race. *Id.* at 89.

{¶27} Thus, Lindstedt's second assigned error lacks merit and is overruled.

{¶28} We address Lindstedt's third and fourth assigned errors collectively, which assert:

{¶29} "The trial court 'erred' in that [the trial] Judge * * * improperly prevented Pastor Lindstedt from presenting evidence in his favor. His 15 Oct. 2015 order denying Pastor Lindstedt a new trial or judgment of acquittal notwithstanding the verdict [the trial] Judge * * * makes light of the fact that it was [the trial] Judge * * * who improperly prevented Pastor Lindstedt from presenting evidence in his favor. (T.d. 200, pl. 2, 3). Trial court judge refused to rule on Defendant's instant motion regarding trial exhibits (T.d. 162).

6

{¶30} "The trial court 'erred' in that [the trial] Judge * * * improperly prevented Pastor Lindstedt from presenting evidence in his favor showing Bryan Reo's perjury and that Bryan Reo is a limited purpose public figure within white supremacy and Christian identity even though a non-white federal agent provocateur. [The trial] Judge * * * used as an excuse to deny Pastor Lindstedt presenting evidence the fact that Pastor Lindstedt was 21 minutes late and then hid himself for nine minutes while Pastor Lindstedt set up for the 2d day of trial on 25 June 2019 to create a pretext to deny Pastor Lindstedt presenting audio impeaching Bryan Reo perjury. (T.p. 265, 266)."

{¶31} Lindstedt's third assignment argues that he filed a motion asking the court to exclude evidence offered by Reo since he failed to identify his trial exhibits in advance of trial. Lindstedt also claims the trial court never addressed this motion. As a result of the court's failure, Lindstedt claims he did not know how to prepare a defense and claims Reo's evidence should have been excluded.

{¶32} As argued, Lindstedt filed a motion captioned "Defendant's instant motion regarding trial exhibits." This motion acknowledges that Lindstedt received certain exhibits from Reo but indicates he received the documents two years earlier in a different proceeding.

{¶33} Although Reo's pretrial statement lists his intended witnesses at trial, it does not identify his proposed exhibits. Notwithstanding, Reo contends that he provided his exhibits to Lindstedt in advance of trial consistent with the court's order.

{¶34} On the first day of trial, Lindstedt references his motion regarding trial exhibits during his objection on another issue. Upon discussing the issue, Lindstedt agrees that he has seen Reo's exhibits and that they were "cherry-picked selections" from

7

his webpage and that they were "no surprise" to him. The court advised him to file his motion and that it would reserve ruling on the issue at the appropriate time.

{¶35} Lindstedt's fourth assignment contends the court erred by precluding him from presenting audio recordings at trial that Reo challenged as not identified in Lindstedt's pretrial exhibit list and voluminous.

{¶36} At the conclusion of the first day of trial, the court reserved the first half hour of the next day of trial to address both issues, stating:

{¶37} "THE COURT: The parties will be here at 8:00 tomorrow.

{¶38} "MR. REO: 8:00? Yes, Your Honor.

{¶39} "MR. LINDSTEDT: Would I be able to present my * * * my problem is I'm trying to figure out, * * * he's cherry picked what he wanted off my webpage. * * * I'm not quite sure how I put this up.

{¶40} "THE COURT: That's what the discovery procedure was for, that you were to supply discovery both ways and that everyone would know what was going to come out here in trial.

{¶41} "MR. LINDSTEDT: He refused to give me any discovery, but –

{¶42} "THE COURT: We will deal with that problem tomorrow.

{¶43} "MR. LINDSTEDT: Okay

{¶44} "* * *

{¶45} "MR. LINDSTEDT: Thank you for a great deal more patience than I usually get from the judiciary, Your Honor.

{¶46} "THE COURT: Don't count on it tomorrow."

{¶47} The next day began with the following statement from the court:

8

{¶48} "THE COURT:  Back on the record in 15CV1590. The jury is not in the courtroom.  I ordered the parties to be here at 8 A.M., and Mr. Reo was here as ordered.  Mr. Lindstedt came into the courtroom at 8:20.  He took the next nine minutes to unpack his materials and get himself ready, so all the time that I was going to allow him to explain to me why he should be able to use some of the videos or audios from the internet has been squandered.  I warned you yesterday.

{¶49} "MR. LINDSTEDT:  I'm sorry I didn't know it was 8:00.

{¶50} "THE COURT:  I made it very clear to you the parties were to be here at 8:00.  I'm not going to keep this jury waiting.  It's now 8:34. We are going to start."

{¶51} The court overruled Lindstedt's motion to exclude Reo's evidence not provided in discovery as well as Lindstedt's introduction of impeachment evidence based on Lindstedt's tardy arrival at trial two days in a row and his missing the scheduled time to review Lindstedt's proposed evidence and arguments.

{¶52} "Generally, the trial court has the discretion to determine the sanction to be imposed for a discovery violation, and the reviewing court will reverse the trial court's determination only for an abuse of discretion. *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 662 N.E.2d 1, syllabus. * * *

{¶53} "The trial court's discretion in choosing a discovery sanction is not unfettered. * * * Rather, a 'trial court must consider the posture of the case and what efforts, if any, preceded the noncompliance and then balance the severity of the violation against the degree of possible sanctions, selecting that sanction which is most appropriate.' * * * ."  *Woodruff v. Barakat*, 10th Dist. Franklin No. 02AP-351, 2002-Ohio-5616, ¶ 15-16.

9

{¶54} Trial courts likewise have discretion upon controlling the flow of trial and addressing procedural issues during trial. *Metro. Life Ins. Co. v. Tomchik*, 134 Ohio App.3d 765, 795, 732 N.E.2d 430 (7th Dist.1999), citing *State v. Prokos*, 91 Ohio App.3d 39, 44, 631 N.E.2d 684 (1993).

{¶55} "'[T]he term abuse of discretion' is one of art, connoting judgment exercised by a court, which does not comport with reason or the record.' *State v. Underwood,* 11th Dist. No. 2008-L-113, 2009-Ohio-2089, 2009 WL 1177050, ¶ 30, citing *State v. Ferranto,* 112 Ohio St. 667, 676–678, 148 N.E. 362 (1925). * * * [A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.' *State v. Beechler,* 2d Dist. No. 09-CA-54, 2010-Ohio-1900, 2010 WL 1731784, ¶ 62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11. When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.' *Id.* at ¶ 67." *Ivancic v. Enos*, 2012-Ohio-3639, 978 N.E.2d 927, ¶ 70 (11th Dist.).

{¶56} As Reo points out, Lindstedt was late returning from lunch the first day of trial as well, and it warned him that it would not be as lenient with him the second day. The next day, the court set aside 30 minutes to address Lindstedt's evidence and motion to exclude, but he arrived when the time was nearly over. At that point, the trial court overruled his motion and excluded his evidence.

{¶57} In light of Lindstedt's repeated tardiness and the court's warning, we do not find the sanction unreasonable. Moreover, Lindstedt was aware of and had seen Reo's evidence that Lindstedt sought to exclude, which came from Lindstedt's website. Finally, the court's October 2015 order denying Lindstedt a new trial or to set aside the verdict makes clear that Lindstedt failed to identify his trial exhibits in advance of trial, as required, and that the court warned him about this during pretrials.

{¶58} Based on the following, we find no abuse of discretion in the trial court's decisions and overrule Lindstedt's third and fourth assigned errors.

{¶59} His fifth assignment contends:

{¶60} "The trial court 'erred' in colluding during trial with Plaintiff Bryan Reo with a history of insinuating itself within the white supremacy/nationalist and Christian identity dissent movements, providing support to the so-called 'leaders' of these false-flag operations, trying to set policy and in any case kicking out and neutralizing the original genuine organic elements like Pastor Lindstedt as Bryan Reo is at least a limited purpose public figure within these dissident movements and thus cannot hope to prevail in court unless they can prove actual malice as in Pastor Lindstedt reporting on Bryan Reo's antics on Pastor Lindstedt's Aryan nations church web pages. Bryan Reo v. Aryan Nations of Missouri 16CV000825 is the resistance equivalent of New York Times v. Sullivan 376 U.S. 254 and Hustler Magazine v. Falwell, 485 U.S. 46."

{¶61} Lindstedt's fifth assignment challenges the trial court's finding that Reo is not a limited purpose public figure. Lindstedt appears to argue that he asked the court to instruct the jury that Reo is a limited purpose public figure, thus requiring a finding of actual malice before Reo could recover for defamation.

11

{¶62} "A defamation plaintiff can be one of four types: (1) a private person, (2) a public official, (3) a public figure, or (4) a limited-purpose public figure. Classification determines the plaintiff's burden of proof. And a plaintiff's classification is a matter of law for the court to decide.

{¶63} "Public officials, public figures, and limited-purpose public figures must show that the challenged statements were made with actual malice, that is, with knowledge that the statements were false or with reckless disregard of whether they were false. In cases involving the defamation of private persons, an ordinary negligence standard is applied." (footnotes omitted.) *Fuchs v. Scripps Howard Broadcasting Co.*, 170 Ohio App.3d 679, 2006-Ohio-5349, 868 N.E.2d 1024, ¶ 29-30 (1st Dist.).

{¶64} Contrary to his argument, however, the trial court instructed the jury that in order for it to find in Reo's favor on his defamation claim, it had to find that Lindstedt acted with actual malice in making the statement. The court defined actual malice as occurring when "the defendant makes a false statement with the knowledge that it is false or with reckless disregard of whether it is false or not." To the extent Lindstedt is arguing otherwise, it is unclear from his assignment of error. And because the factual predicate for this argument is erroneous, it lacks merit.

{¶65} Lindstedt's fifth assigned error is overruled.

{¶66} Lindstedt's sixth assigned error contends:

{¶67} "The trial court 'erred' in allowing Attorney Bryan Reo to defame Defendant Pastor Lindstedt as a domestic terrorist 'child molester' during Reo's closing arguments at trial on 26 June 2019 wherein Reo admitted to calling Pastor Lindstedt a 'convicted child molester' since 5 Nov. 2010 and all of the years since. [Transcript page 513-514].

The jury took from the trial court enabling Bryan Reo's defamation and libel per se as mere 'argument' that it was alright, even commendable to punish Pastor Lindstedt and Lindstedt's Aryan nations church for defamation for truthfully calling Bryan Reo a[n] * * * agent provocateur because Defendants were/are racist neo-nazi white supremacist child molesters and you can't punish them enough."

{¶68} Lindstedt argues the court erred in allowing Reo to call Lindstedt a child molester during closing arguments and throughout trial because it was libelous and inflamed the jury.

{¶69} The basis for Lindstedt's counterclaim was that Reo defamed him by calling him a child molester. However, Reo challenged this allegation at trial based on the truth of the matter asserted. R.C. 2739.02, *Defenses in actions for libel or slander*, states:

{¶70} "In an action for a libel or a slander, the defendant may allege and prove the truth of the matter charged as defamatory. Proof of the truth thereof shall be a complete defense. In all such actions any mitigating circumstances may be proved to reduce damages."

{¶71} Moreover, Reo contends he was reciting Lindstedt's testimony in his closing argument that Lindstedt now claims constitutes error. Consistent with this contention, Lindstedt testified and said at least twice during trial that he had been accused of molesting his grandson and that he spent time in a mental institution as a result of the allegations, but that he was not actually convicted. Instead, he explained he was institutionalized for two and a half years because he refused a public defender and was imprisoned illegally. Thus, although it was true Lindstedt was charged, it was not established whether he was convicted.

13

{¶72} And during Reo's testimony, Reo stated that it was "his belief" that Lindstedt was a child molester; he did not state that Lindstedt was convicted of child molestation.

{¶73} Because whether or not Lindstedt was a child molester was central to Lindstedt's counterclaim, Reo's references to testimony on this issue were proper and consistent with his defense of showing the allegation was true under R.C. 2739.02.

{¶74} Moreover, the court admonished the jury that closing arguments are not evidence, but are the parties' arguments.

{¶75} "[C]ounsel is afforded wide latitude during the presentation of closing arguments. *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph two of the syllabus. Whether counsel has exceeded the proper bounds of closing argument is [a] discretionary determination to be made by the trial court. *Id.* at paragraph three of the syllabus. Absent an abuse of discretion, the trial court's decision will not be reversed on appeal. *Id.*" *Lykins v. Miami Valley Hosp.*, 157 Ohio App.3d 291, 2004-Ohio-2732, 811 N.E.2d 124, ¶ 27 (2d Dist.). An abuse of discretion connotes judgment exercised by a court that does not comport with reason or the record. *Ivancic v. Enos*, 2012-Ohio-3639, 978 N.E.2d 927, ¶ 70 (11th Dist.).

{¶76} Based on the foregoing, Reo's reference to Lindstedt's testimony during closing was consistent with the evidence and proper in light of the nature of the allegation, and we find no error. Thus, his sixth assigned error lacks merit.

{¶77} Lindstedt's seventh assigned error argues:

{¶78} "The trial court 'erred' in deliberate refusal to pay anything other than lip service to the one-year hard limit Ohio Statute of Limitations Ohio Revised Code R.C. 2305.11 and R.C. 2305.03 for Defamation and claimed 'With Respect to Lindstedt's claim

14

that the statute of limitations had expired, the court [improperly] finds that Lindstedt failed to present evidence when the statements were first published.' (T.d. 200, p. 2). This is misconduct given that it was the trial court which refused to allow Defendant to present evidence at trial, not that it was necessary to do so because the Ohio statute acts as an absolute bar to prosecution of these cases in the first place. According to Ohio Revised Code 2305.03 Defendant involving this statute acts as an absolute bar to any further prosecution of this case. Defendant did so on his very first Answer & Counterclaim of T.d 5 of 26 Oct. 2015 and Amended Answer & Counterclaim of 7 Jan 2016 T.d. 52, p.22. Thus, the trial court disobeyed the statute because Ohio Revised Code Chapter 2305 involves the jurisdiction of Ohio courts and this Court has in its lust to destroy Pastor Lindstedt and Lindstedt's church via Bryan Reo's lawsuit(s) will brook no limit to its jurisdiction. Defendant has been invoking the statute ever since Bryan Reo refiled the case once lost in federal court. Bryan Reo's claim that there is a carrying statute allowing Bryan Reo to refile its case once it lost in federal court is in any case finished by Portee v. Cleveland Clinic 155 Ohio St. 3d 1."

{¶79} Lindstedt argues that Reo's claims were filed beyond the statute of limitations and that the trial court erred in failing to enforce it and reduce Reo's claims. We disagree.

{¶80} The burden of establishing the affirmative defense of statute of limitations is on the defendant. *Leichliter v. Natl. City Bank of Columbus*, 134 Ohio App.3d 26, 32, 729 N.E.2d 1285 (10th Dist.1999), citing *Durham v. Anka Research Ltd.*, 60 Ohio App.2d 239, 244, 396 N.E.2d 799 (1978).

15

{¶81} Before trial commenced, the court limited Reo's claims to those occurring within one year before he filed his complaint; it did not, however, determine before the commencement of trial which of Lindstedt's defamatory comments were made during that year. Lindstedt did not move for dismissal on this basis, and thus, the court was not prompted to address what claims were beyond the statute of limitations and which claims survived. Thus, it remained Lindstedt's burden to establish this defense at trial.

{¶82} Moreover, Lindstedt's appellate brief relies on the pleadings to establish when his defamatory statements were made, but he does not identify trial testimony establishing when the statements were made.

{¶83} And in its October 15, 2019 decision overruling Lindstedt's motion for judgment to set aside the verdict and his motion for reconsideration and a new trial, the trial court addresses this issue and explains:

{¶84} "With respect to Lindstedt's claim that the statute of limitations expired, the court finds that Lindstedt failed to present evidence when the statements at issue were first published. Reo's claims were thus unrebutted."

{¶85} Lindstedt does not challenge this finding with argument or citation to the record evidencing where he established that the defamatory remarks were made outside this one-year period. As stated under Lindstedt's first assigned error, however, an appellant bears the burden of demonstrating error on appeal. *Davis v. Wesolowski*, 2020-Ohio-677, 146 N.E.3d 633, ¶ 29 (8th Dist.). It is not our duty "to develop an argument in support of an assignment of error." *Children's Hosp. Med. Ctr. v. S. Lorain Merchants' Assn.*, 9th Dist. Summit No. 22881, 2006-Ohio-2407, ¶ 6, citing *Prince v. Jordan,* 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, at ¶ 40.

16

{¶86} Accordingly, the trial court did not err, and Lindstedt's seventh assigned error lacks merit.

{¶87} Lindstedt's eighth assigned error contends:

{¶88} "The trial court 'erred' in deliberately denying Defendants Pastor Lindstedt and unrepresented Co-Defendant Lindstedt's Aryan nations church their chance via jury instructions to punish Attorney Bryan Reo for abuse of legal process in bringing forward Reo's malicious litigation; from destroying evidence, and for tortuous interference with contract in taking down through fraudulent digital millennium copyright act and terms of service complaints Pastor Lindstedt's and Lindstedt's Church web pages and forums."

{¶89} Lindstedt challenges the trial court's decision granting a directed verdict in Reo's favor on nine out of ten of Lindstedt's counterclaims.

{¶90} "A motion for a directed verdict should be granted when, after construing the evidence most strongly in favor of the party against whom the motion is directed, " 'reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party.' " * * * Before granting a motion for a directed verdict in accordance with Civ.R. 50(A)(4), the reasonable-minds test requires the court to determine whether there is any evidence of substantive probative value that favors the nonmoving party. * * * Thus, although a motion for a directed verdict does not present a question of fact, when deciding a motion for a directed verdict the court must "'review and consider the evidence.'" *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 68, 430 N.E.2d 935 (1982), quoting *O'Day v. Webb*, 29 Ohio St.2d 215, 280 N.E.2d 896 (1972), paragraph three of the syllabus. In order for a personal-injury action to be submitted to a jury, a plaintiff must produce some evidence for each element essential to establish

17

liability. *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285, 423 N.E.2d 467 (1981)." *Rieger v. Giant Eagle, Inc.*, 157 Ohio St.3d 512, 2019-Ohio-3745, 138 N.E.3d 1121.

{¶91} "A directed verdict is appropriate when the opposing party has failed to adduce any evidence on the essential elements of the claim. *Cooper v. Grace Baptist Church* (1992), 81 Ohio App.3d 728, 734, 612 N.E.2d 357. The issue to be determined involves a test of the legal sufficiency of the evidence to allow the case to proceed to the jury, and it constitutes a question of law, not one of fact. *Hargrove v. Tanner* (1990), 66 Ohio App.3d 693, 695, 586 N.E.2d 141. A court of appeals reviews the trial court's ruling on a motion for directed verdict de novo. *McConnell v. Hunt Sports Ents.* (1999), 132 Ohio App.3d 657, 686–687, 725 N.E.2d 1193." *Burns v. Prudential Securities, Inc.*, 167 Ohio App.3d 809, 2006-Ohio-3550, 857 N.E.2d 621, ¶ 18 (3d Dist.).

{¶92} The court's July 1, 2019 judgment sets forth its directed verdict stating in part:

{¶93} "The court granted Plaintiff Bryan Reo's Motion for Directed Verdict as to Defendant Martin Lindstedt's counterclaims for:

{¶94} "Abuse of Legal Process as there was no evidence that Plaintiff Reo perverted the lawsuit or proceedings to attempt to accomplish an ulterior purpose for which it was not designed and there was no evidence that Defendant Lindstedt was in any way directly damaged by any alleged wrongful use of process.

{¶95} "Malicious prosecution as there was no evidence of a malicious filing of a prior lawsuit or proceeding against· Defendant Lindstedt by Reo, that any prior filing lacked probable cause, or that Defendant Lindstedt had a seizure of his person or property during the course of the prior lawsuit or proceeding.

18

{¶96} "Vexatious Litigation as this is not a cause of action.

{¶97} "Statutory Criminal Liability as there was a lack of sufficient evidence that a criminal act took place and a lack of proof of injury.

{¶98} "Civil Conspiracy due to a lack of proof of that Plaintiff Reo participated in a malicious combination.

{¶99} "Spoliation as there was no evidence of a Plaintiff Reo willfully destroying or interfering with evidence for the purpose of disruption Defendant Lindstedt's .ability to prove a claim or defense in the pending or probable lawsuit.

{¶100} "Tortious Interference with Economic Relations as Plaintiff Reo had a justification or privilege to make complaints to internet service providers.

{¶101} "Invasion of Privacy in that there was no evidence of Plaintiff Reo intentionally intruded into the private activities, physically or otherwise, into the private activities, solitude, or seclusion of Defendant Lindstedt or that any intrusion would be highly offensive to a reasonable person.

{¶102} "Intentional Infliction of Emotional Distress as there was no evidence that Plaintiff Reo acted in an extreme and outrageous manner, there was no independent third-party evidence of injury to Defendant Lindstedt, and there was no evidence from Defendant Lindstedt of emotional distress."

{¶103} Regardless of the trial court's findings, Lindstedt does not set forth the governing law establishing the necessary elements for these nine claims. He likewise does not direct our attention to any record evidence presented at trial demonstrating that he established the elements of these claims at trial.

{¶104} As stated, it is not our function to formulate the basis for error on appeal. App.R. 16(A)(7). That obligation lies with the appellant. And when presented with unsupported allegations asserting error with no evidence or law in support, we will not scour the record in an effort to establish an appellant's argument for him. *Id.*; *State v. Parks*, 11th Dist. Lake No. 2019-L-097, 2020-Ohio-4524, ¶ 117, citing *Byers DiPaola Castle v. Ravenna City Planning Comm.*, 11th Dist. Portage No. 2010-P-0063, 2011-Ohio-6095, ¶ 35.

{¶105} Accordingly, Lindstedt's eighth assignment is overruled.

{¶106} Lindstedt's ninth and final assigned error attempts to raise an error on behalf of the church that alleges it is unlawful for us not to allow him to raise arguments on behalf of the church when it was a named defendant.

{¶107} As noted, Reo's claims were originally asserted in two different complaints in separate courts against Lindstedt and the church but were eventually consolidated. The trial court granted Reo's motion to strike the pleadings that Lindstedt filed on behalf of the church because he was engaging in the unauthorized practice of law by representing the church. The trial court subsequently granted default judgment against the church in February of 2017 based on its failure to file an answer or other responsive pleading.

{¶108} Thereafter, Lindstedt continued to list the church, along with himself, in most of his pleadings. However, the trial court struck pleadings in which Lindstedt raised claims on behalf of the church and ordered stricken the counterclaim he asserted on behalf of the church. And he does not challenge its finding that his representation of the church constitutes the unauthorized practice of law with legal authority or evidence.

20

{¶109} Moreover, on appeal Lindstedt continued to raise arguments on behalf of the church, which we ordered stricken.

{¶110} And because Lindstedt again presents no legal authority or citation to the record in support of this assignment, we will not construct it for him. App.R. 16(A)(7); *State v. Parks*, 11th Dist. Lake No. 2019-L-097, 2020-Ohio-4524, ¶ 117, citing *Byers DiPaola Castle v. Ravenna City Planning Comm.*, 11th Dist. Portage No. 2010-P-0063, 2011-Ohio-6095, ¶ 35.

{¶111} Accordingly, his ninth assignment of error is overruled.

{¶112} Based on the foregoing, Lindstedt's assigned errors lack merit and are overruled.

{¶113} The trial court's decision is affirmed.


MATT LYNCH, J.,

MARY JANE TRAPP, J.,

concur.

21