[Cite as *Reo v. Lindstedt*, 2021-Ohio-1455.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| BRYAN ANTHONY REO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NOS.  2019-L-136**<br>**2019-L-137** |
| MARTIN LINDSTEDT, et al., | : | |
| Defendant-Appellee. | : | |

Civil Appeals from the Lake County Court of Common Pleas, Case Nos. 2015 CV 001590 and 2016 CV 000825.

Judgment:  Affirmed.


*Bryan Anthony Reo*, pro se, 7143 Rippling Brook Lane, P.O. Box 5100, Mentor, Ohio 44061 (Plaintiff-Appellant).

*Martin Lindstedt*, pro se, 338 Rabbit Track Road, Granby, Missouri 64844 (Defendant-Appellee).


THOMAS R. WRIGHT, J.

{¶1}  Appellant, Bryan Anthony Reo, appeals the trial court's October 2019 decision denying his motion for prejudgment interest.  We affirm.

{¶2}  A jury rendered a verdict in Reo's favor on his claims for defamation per se and invasion of privacy/false light and awarded him punitive and compensatory damages totaling $105,400.00 against appellee, Martin Lindstedt, and his corporation, the Church of Jesus Christ Christian/Aryan Nations of Missouri.  The lawsuit stemmed from

Lindstedt's internet harassment of Reo. Lindstedt appealed the trial court's judgment entering the verdict in Reo's favor, and we affirmed. *Reo v. Lindstedt,* 11th Dist. Lake Nos. 2019-L-073 & 2019-L-074, 2020-Ohio-6674.

{¶3} Reo moved for prejudgment interest in the amount of $18,521.24. The trial court denied the motion following a hearing. Reo appeals and raises five assignments of error. We collectively address his assigned errors, as they are interrelated:

> [1.] The trial court committed prejudicial error in failing to find that Defendant-[Appellee] litigated in bad faith and in failing to find that he unduly delayed the proceedings.
>
> [2.] The trial court committed prejudicial error in making findings of fact that were contrary to the record evidence of the court's own docket and the transcripts of the evidentiary hearings.
>
> [3.] The trial court committed prejudicial error in concluding that a defamation defendant's mistake of law as to [Fifth] Amendment privilege and as to his purported belief in the truth of his own defamatory statements served to provide a sufficient good faith basis for mounting a legally insufficient defense.
>
> [4.] The trial court erred in finding that Plaintiff-Appellant's settlement offers were unreasonable by combining all of the settlement offers into one substantial demand instead of analyzing each separate offer on its own, with any one offer on its own being objectively and subjectively reasonable.
>
> [5.] The trial court committed prejudicial error in failing to award pre-judgment interest to Plaintiff-Appellant in light of Defendant-Appellee's obvious bad faith, undue delay, non-cooperation with discovery, and his failure to attempt to settle in good faith.

{¶4} Reo globally explains that the instant appeal "is based on the simple fact that [Reo] offered to let [Lindstedt] settle the case for $100,000.00 and ultimately

2

recovered $105,400.00 at trial (after nearly 4 years of litigation) while [Lindstedt] admitted that he never offered any money to [Reo]."

{¶5} "Ohio has created a statutory right to prejudgment interest." *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 657, 635 N.E.2d 331 (1994). The statute, R.C. 1343.03(C)(1), states in relevant part:

> *If*, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, *the court determines* at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case *and* that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case, *interest* on the judgment, decree, or order *shall be computed as follows*: * * *

(Emphasis added.)

{¶6} "[I]f a party meets the * * * requirements of the statute, the decision to allow or not allow prejudgment interest is not discretionary. What *is* discretionary with the trial court is the determination of lack of good faith." (Emphasis added.) *Moskovitz* at 658. We therefore review a trial court's determination of "good faith" or lack thereof for an abuse of discretion. *Id.* Such judgments, which rely so heavily on findings of fact, will not be disturbed on appeal as being an abuse of discretion if supported by some competent, credible evidence. *Loder v. Burger*, 113 Ohio App.3d 669, 674, 681 N.E.2d 1357 (11th Dist.1996).

{¶7} "'[T]he term "abuse of discretion" is one of art, connoting judgment exercised by a court, which does not comport with reason or the record.'" *Ivancic v. Enos*, 11th Dist. Lake No. 2011-L-050, 2012-Ohio-3639, 978 N.E.2d 927, ¶ 70, quoting *State v. Underwood,* 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶ 30, citing *State v.*

3

*Ferranto,* 112 Ohio St. 667, 676-678, 148 N.E. 362 (1925). An abuse of discretion occurs when the trial court fails "'to exercise sound, reasonable, and legal decision-making.'" *Ivancic* at ¶ 70, quoting *State v. Beechler,* 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.2004). "'[W]here the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Ivancic* at ¶ 70, quoting *Beechler* at ¶ 67.

{¶8} "A party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party." *Kalain v. Smith*, 25 Ohio St.3d 157, 495 N.E.2d 572 (1986), syllabus. "If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." *Id.* The latter principle must be strictly construed, however, so as to carry out the purposes of the statute—"'to encourage litigants to make a good faith effort to settle their case, thereby conserving legal resources and promoting judicial economy.'" *Moskovitz*, 69 Ohio St.3d at 657-658, 659, 635 N.E.2d 331, quoting *Peyko v. Frederick*, 25 Ohio St.3d 164, 167, 495 N.E.2d 918 (1986).

{¶9} Thus, the burden of proof lies with the party seeking prejudgment interest. *Id.* at 659. "Accordingly, it is incumbent on a party seeking an award to present evidence of a written (or something equally persuasive) offer to settle that was reasonable considering such factors as the type of case, the injuries involved, applicable law,

4

defenses available, and the nature, scope and frequency of efforts to settle." *Id.* "Other factors would include responses—or lack thereof—and a demand substantiated by facts and figures. Subjective claims of lack of good faith will generally not be sufficient." *Id.* "[T]he burden does not include the requirement that bad faith of the other party be shown. * * * [A] party may have failed to make a good faith effort to settle even though he or she did not act in bad faith." *Id.*, citing *Kalain* at 159.

{¶10} Here, the trial court's judgment entry explained that this case arose as a result of the parties' "highly disparaging comments about each other on various internet sites. Both had strong personal opinions and as the conflict developed, they became heated opponents." Describing the hearing on prejudgment interest, the court then noted the following:

> Reo testified that he offered to settle the cases in return for $100,000 in damages from Lindstedt along with Lindstedt agreeing to turn over all firearms he may have, attend psychological counseling, remove all of his material on the internet and abstain from using the internet in the future. Lindstedt disputed liability arguing that this court had no jurisdiction over a Missouri resident, that his statements on the internet were protected by the First Amendment and that his statements on the internet were nine years old and thus were beyond the one year statute of limitations. Lindstedt further claimed he was relentlessly pursued by Reo.

{¶11} The trial court ultimately determined that Reo failed to meet his burden of proof justifying an award of prejudgment interest. Regarding the *Kalain* factors, the trial court concluded that Lindstedt had "reasonably responded to discovery"; "legitimately disputed his liability as to Reo's claims"; "did not seek to unnecessarily delay the case"; and, therefore, the court "[could] not conclude that Lindstedt failed to have a rational basis for not settling." In support of its decision, the court found that "[w]hile there was

5

considerable motion practice in both cases, Lindstedt did not initiate the lawsuits and his filings were reactive in nature"; and although the cases had been set for trial nine times, "[n]one of the requests for continuances were made by Lindstedt although he agreed to several." The court also noted that, "while the jury rendered a verdict in favor of Reo, Lindstedt appeared pro se, did not present any evidence and did not properly present his case or defend himself due to his inexperience."

{¶12} On appeal, Reo argues that the trial court's factual findings are unsupported and contradicted by the record. Specifically, he contends the record demonstrates that Lindstedt filed for at least two continuances and agreed with at least one sought by Reo; caused significant and undue delays with a plethora of "absurd and abusive" filings; completely failed to cooperate with discovery "in any meaningful context"; and obviously litigated in "bad faith." Reo further argues the trial court erred in concluding that Lindstedt had a rational basis for not settling due to Lindstedt's beliefs that the court lacked jurisdiction over him and that he was protected from liability by the First Amendment. Finally, Reo argues the trial court erred by "combining all of the settlement offers into one substantial demand" and then "implicitly [finding] that the colossal demand (one never made by [Reo]) was unreasonable."

{¶13} Reo's July 2019 motion sought prejudgment interest in the amount of $18,521.24, but he did not identify the legal or factual basis for the request. The parties' arguments were offered at the hearing, but no documentary evidence was presented.

{¶14} At the hearing, Reo explained that he offered to dismiss his claims if Lindstedt paid him $100,000, removed all defamatory content under Lindstedt's control, and ceased defaming him. Reo said that, in response, Lindstedt solicited his murder and

6

stated Reo's father and Reo's cat would be found dead. Reo recalled that at the final pretrial before the magistrate, he communicated to the magistrate that he either wants "$100,000 and stop libeling me and remove all libel, or deed that land over to me so you can't live off of the rental income and you have to clean up your act and go get a job." According to Reo, the magistrate told him that Lindstedt was not offering anything. As a result of Lindstedt's position and the previous threats, Reo said he made no further settlement attempts. Reo later relayed that prior to filing the lawsuit he had offered to settle the matter for no money if Lindstedt agreed to leave him alone, take down his website, and seek psychiatric help.

{¶15} Lindstedt responded that Reo has "demanded $100,000 or several thousand dollars. * * * He's demanded that I turn myself in to psychiatric help, give up all my guns, turn over my web pages to him. * * * [H]e was going to go ahead and reduce me to where I couldn't even have a touch tone phone, I wouldn't be allowed to be on the internet." Lindstedt explained that he had agreed to stop talking about Reo if he "left the movement," meaning if Reo would stop pretending to be a white supremacist and cease trolling white supremacists and Lindstedt's website. According to Lindstedt, Reo did agree to "leave the movement" at one point but then reneged. Lindstedt stated he never offered Reo any amount of money to settle the case because of his belief that Reo "didn't have a case," "he was trying to take down a web page where his name wasn't mentioned at all," "he has a habit of stalking," "his terrorism," and "I don't think this court ever had jurisdiction."

{¶16} Lindstedt further explained that Reo filed "motion after motion * * * [and] I just simply wanted [him] to leave the movement * * * and I thought I had a first amendment

7

from [sic] freedom of speech, freedom of religion[.] So I get demands that I give up my web page, I take down my entire web page, demands for $100,000. I took it as just simply so much delusional distortion on his part under color of law." With respect to the final pretrial, Lindstedt said he spoke with Reo for about 15-20 minutes, but they "were not getting anywhere." He then spoke with the magistrate for about one and ½ hours. During that time, Lindstedt recalled, the magistrate said that Reo would also have to prove his case in Missouri and South Dakota in order to obtain and collect any judgment from Lindstedt.

{¶17} As for Reo's argument that the court improperly grouped his settlement demands into one when evaluating his efforts to settle, Reo did not detail or identify by date when his settlement attempts occurred. Neither his motion nor his arguments at the hearing rely on emails or other records indicating when or how he communicated with Lindstedt. The only referenced time that settlement discussions occurred was at the final pretrial. Thus, Reo's efforts as distinct from one another is less than clear in the record.

{¶18} Further, the statute sets forth a conjunctive test—in order to award prejudgment interest, the trial court is required to find that (1) the defendant failed to make a good faith effort to settle the case *and* (2) the plaintiff did not fail to make a good faith effort to settle the case. Thus, even assuming Reo did make a good faith effort, the trial court could not award him prejudgment interest unless it also found that Lindstedt failed to do so. Neither Reo's motion for prejudgment interest nor his argument at the hearing provide competent, credible evidence to support such a finding, however. His subjective claims of Lindstedt's lack of good faith are not sufficient, and "a party must demonstrate more than bad judgment or negligence. Rather, a lack of good faith imports a dishonest

8

purpose, conscious wrongdoing, or breach of a known duty based on some ulterior motive or ill will in the nature of fraud." (Citations omitted.) *Stephenson v. R. & R. Sanitation, Inc.*, 11th Dist. Portage No. 2002-P-0040, 2003-Ohio-5426, ¶ 18. On the other hand, there is competent, credible evidence in the record to support the trial court's findings that Lindstedt reasonably responded to discovery, did not seek to unnecessarily delay the case, and legitimately disputed his liability on First Amendment grounds. Hence, we cannot conclude that the trial court abused its discretion by finding that an award to Reo was inappropriate because Reo failed to meet his burden of proof.

{¶19} Additionally, while we agree that Lindstedt filed pleadings throughout the proceedings that included improper personal attacks on Reo, this alone does not constitute a failure to make a good faith effort to settle. Although these inappropriate comments may have delayed the proceedings, the trial court found that Reo was the party who caused significant delay by employing considerable motion practice, including several motions to continue the trial, and noticing an appeal from a nonfinal order.

{¶20} Finally, the trial court intimated that the denial was, in part, a function of Lindstedt's failure at trial to present any evidence in his defense due to inexperience. Although the court did not identify its reason for this indication—e.g., it did not state that Reo had an unestablished defense or that the damages award was unsubstantiated— "the trial court is not limited to the evidence presented at the prejudgment interest hearing. The court may also review the evidence presented at trial, as well as its prior rulings and jury instructions, especially when considering such factors as the type of case, the injuries involved, applicable law, and the available defenses." *Galmish v. Cicchini*, 90 Ohio St.3d 22, 34, 734 N.E.2d 782 (2000); *Stephenson* at ¶ 20.

9

{¶21} Consistent with the deference due the trial court's exercise of discretion, we conclude the trial court's denial of prejudgment interest is not unreasonable or arbitrary. On this matter, we cannot and should not substitute our judgment for that of the trial court. *Borucki v. Skiffey*, 11th Dist. Trumbull Nos. 2000-T-0029 & 2000-T-0057, 2001 WL 1077854, *4 (Sept. 14, 2001). "Again, R.C. 1343.03(C) is designed to encourage litigants to make a good faith effort to settle, not to force a settlement where a party has a good faith basis for disputing a claim. Consequently, our holding today is completely congruent with the spirit of R.C. 1343.03(C)." *Stephenson*, 2003-Ohio-5426, at ¶ 28, citing *Fultz v. St. Clair*, 11th Dist. Lake No. 2001-L-165, 2002-Ohio-7142, ¶ 133, citing *Peyko*, 25 Ohio St.3d at 167, 495 N.E.2d 918. Accordingly, Reo's assigned errors lack merit.

{¶22} The judgment of the Lake County Court of Common Pleas is affirmed.


MARY JANE TRAPP, P.J.,

MATT LYNCH, J.,

concur.