[Cite as *State v. Davids*, 2022-Ohio-2272.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 110890 |
| v. | : | |
| BRANDON DAVIDS, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** June 30, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-649775-B

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Nora C. Bryan, Assistant Prosecuting Attorney, *for appellee*.

Buckeye Law Office and P. Andrew Baker, *for appellant*.

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant Brandon Davids ("Davids") appeals from his convictions and sentence for aggravated burglary, felonious assault, and having a

weapon while under disability following a jury trial. For the reasons that follow, we affirm and remand.

**Factual and Procedural History**

{¶ 2} On May 5, 2020, a Cuyahoga County Grand Jury indicted Davids and Lashar Clay[1] ("Clay") on one count of aggravated burglary in violation of R.C. 2911.11(A)(2); two counts of felonious assault in violation of R.C. 2903.11(A)(2); and one count of felonious assault in violation of R.C. 2903.11(A)(1). Davids was also charged with one count of having a weapon while under disability in violation of R.C. 2923.13(A)(3). The aggravated burglary and felonious assault charges each carried one- and three-year firearm specifications, and the having a weapon while under disability charge carried a gun forfeiture specification. Davids waived his right to a jury trial on the having a weapon while under disability charge.

{¶ 3} These charges arose from two separate incidents on August 25 and August 26, 2019. On August 25, 2019, between 8 and 9 a.m., Brenda Fialko ("Fialko"), her friend Christy Williams ("Williams"), and Williams's mother Patricia ("Patricia") were sitting on the front porch of Fialko's house located at 3212 West 95th Street in Cleveland, Ohio. Fialko had known Davids, also known as "Beast," for between 10 and 15 years. Williams had known Davids since approximately 2012. At the time of this incident, Williams owed an outstanding drug debt to

---

[1] Clay ultimately pleaded guilty to an amended count of aggravated assault, a fourth-degree felony in violation of R.C. 2903.12(A)(1). As part of Clay's plea agreement, she was required to cooperate with the state and testify truthfully and consistently with her previous statements. Clay was sentenced to 41 months of community control.

Davids. Approximately one week prior to this incident, Davids had chased Williams down the street.

{¶ 4} Clay had met Davids several weeks prior to the incident in this case. On the morning of August 25, 2019, Clay picked up Davids in her blue Mazda to drive him around the city of Cleveland to sell drugs. Clay used crack cocaine daily, and she testified that she volunteered for this arrangement with Davids to help support her habit. Clay would drive Davids to various locations and remain in the car, smoking crack while she waited for him.

{¶ 5} Around 8:45 a.m., Clay and Davids drove to West 95th Street. Davids got out of the car and approached Fialko's house. As Davids approached the house, Williams and Patricia panicked, ran inside the house, locked the front door, and ran upstairs while Fialko remained on the front porch. Davids demanded Fialko open the door, pounded on the door, and ultimately kicked in the front door of the home. Davids chased Williams and Patricia to the second floor, where they escaped out of an upstairs window onto the roof of the home. While on the roof, Williams called 911. As Williams was crawling across the roof, Davids came out the window and shot at her.

{¶ 6} At that point, police were en route to the scene. Davids ran back to Clay's car, got in the car, and told her to drive. Clay drove with Davids to Elyria. The two got a hotel room, and in the early morning hours of August 26, 2019, drove back to Cleveland.

{¶ 7} As Clay and Davids drove away, police responded to the scene following a report of gunshots. Fialko and Williams both identified Davids as the individual who broke down Fialko's door and shot at the women. Neighbors who spoke to the responding officers also described seeing women on the roof screaming as a man came out onto the roof, pointed a gun, and fired one shot at them.

{¶ 8} At around 3 a.m. on the following day, August 26, 2019, Fialko was walking down West 96th Street when she saw the same car that Davids drove in the day before. Davids got out of the car, came up to Fialko, and shot her in the arm. Fialko turned around, at which point Davids shot at her twice more, hitting her once in the upper back. As a result of these gunshot wounds, Fialko suffered a broken humerus and significant nerve damage to her hand resulting in a loss of mobility in her hand.

{¶ 9} Police responded to a report of an assault in the area of West 95th Street and observed Fialko walking down the street. When the officers caught up to her on her porch, they discovered that she had multiple gunshot wounds and called EMS. Fialko was upset and crying, but ultimately told officers that Davids and Clay had pulled up to her as she was walking and Davids had gotten out of the car, chased her, and shot her.

{¶ 10} Davids initially pleaded not guilty to these charges.

{¶ 11} On March 31, 2021, Davids's counsel filed a motion to withdraw. The court held a hearing on this motion on April 13, 2021. After hearing from Davids and his counsel, the court denied the motion.

{¶ 12} On June 7, 2021, Davids filed a motion to dismiss based on an alleged violation of his right to a speedy trial. On July 8, 2021, the state filed a response to Davids's motion to dismiss, and on July 12, 2021, Davids filed a reply brief. On July 15, 2021, the court held a hearing on the motion to dismiss and subsequently denied the motion.

{¶ 13} On July 20, 2021, Davids waived his right to a jury trial on the having a weapon while under disability charge, and the case proceeded to a jury trial on the remaining charges.

{¶ 14} During voir dire, prospective Juror No. 5 ("Juror 5") disclosed that approximately eight years earlier, her cousin had been convicted in Cuyahoga County of robbery and murder. Following that disclosure, the following exchange took place:

> THE COURT: Would that have any effect on your ability to be fair and impartial?
>
> JUROR 5: No.
>
> THE COURT: You could set it aside?
>
> JUROR 5: Yes.
>
> * * *
>
> THE COURT: [Juror 5], do you think your husband [sic] was treated fairly?
>
> JUROR 5: My cousin.
>
> THE COURT: Your cousin. I'm sorry.
>
> JUROR 5: I don't think so.

THE COURT:  Will that have an effect on your ability to be fair and impartial?

JUROR 5:  No.

During a sidebar, the following exchange took place between the court and counsel:

THE STATE:  Juror No. 5 said she doesn't think she could be impartial based on her previous experience with her cousin.

DEFENSE COUNSEL:  She said that initially, but she did rehabilitate herself. She said I don't think he was treated fairly but I could be impartial.

THE STATE:  She said she doesn't think he was treated fairly by our office.

THE COURT:  Who else doesn't think they're treated fairly by you?

THE STATE:  And that generally —

* * *

THE STATE:  Specifically our office is for cause.

THE COURT:  We'll knock [Juror] No. 5 out.

DEFENSE COUNSEL:  I would very so much object. I have no issue with them using a peremptory on her. She did say she —

* * *

THE COURT:  I'll knock [Juror No.] 5 out. I think that the combination of the seriousness of that offense as a murder offense, he's in prison. That was eight years ago. She doesn't think he was treated fairly.

{¶ 15} The court subsequently excused Juror 5 for cause, and the case proceeded to trial.  The state presented evidence in the form of surveillance footage, photos, and medical records, as well as testimony from Fialko, Williams, Clay, responding police officers, and the paramedic who treated Fialko for her gunshot wounds.

{¶ 16} Following the state's case, Davids made a Crim.R. 29 motion, which the court denied. Davids did not testify or present evidence on his behalf and subsequently renewed his Crim.R. 29 motion, which the court again denied.

{¶ 17} On July 22, 2021, Davids was found guilty of all charges. The jury returned guilty verdicts on Count 1, aggravated burglary, and Counts 2 through 4, felonious assault. The court found Davids guilty of Count 5, having a weapon while under disability. The court referred Davids to the probation department for a presentence-investigation report.

{¶ 18} On September 7, 2021, the court held a sentencing hearing. The hearing began with a discussion among the court and the parties as to the sentencing requirements with respect to Davids's firearm specifications. The court stated:

> Now, you have the three-year firearm specifications which are mandatory. Whether the court imposes one, two, or three of them, they're all mandatory. Each has to be run consecutive. The question is whether the third is mandatory to run consecutive or discretionary consecutive.

{¶ 19} The court also heard arguments from the state and defense counsel with respect to merger. The parties agreed that Counts 3 and 4 would merge for purposes of sentencing, and the state elected that Davids be sentenced on Count 3. Davids argued that Count 1, aggravated burglary, should merge with Count 2, felonious assault. The state disagreed. The court then heard from the assistant prosecuting attorney, Fialko, and defense counsel. Defense counsel asked that

Davids receive a minimum sentence and objected to the application of the Reagan Tokes Law to his sentence.

{¶ 20} The court ultimately sentenced Davids to seven to 10 and a half years on Count 1, aggravated burglary, consecutive to the three-year firearm specification on that offense and six years on Count 2, felonious assault, consecutive to the three-year firearm specification on that offense. The court sentenced Davids to six years on Count 3, felonious assault, consecutive to the three-year firearm specification on that offense. The court ordered that each of the three three-year firearm specifications be served consecutively to each other. The court ordered that Davids's six-year sentence on Count 2 be served concurrently to the sentences on the other offenses and that his six-year sentence on Count 3 be served consecutively to Counts 1 and 2. Finally, on Count 5, having a weapon while under disability, the court imposed a three-year sentence, to be served concurrently. Davids's total aggregate sentence was 22 to 25 and a half years.

{¶ 21} Davids appeals, presenting eight assignments of error for our review:

I. The trial court erred when it improperly removed a juror for cause.

II. The trial court erred when it refused to allow defense counsel to withdraw.

III. The trial court erred when it allowed improper character evidence of defendant-appellant.

IV. The trial court erred when it failed to merge Counts 1 and 2.

V. The trial court erred when it sentenced defendant-appellant under the Reagan Tokes Law.

VI. The trial court erred when it imposed consecutive firearm specifications on each count involving a firearm specification.

VII. The trial court erred in entering the sentencing entry and it must be corrected.

VIII. The trial court erred when it violated defendant-appellant's right to a speedy trial.

**Legal Analysis**

**I. Juror Removal**

{¶ 22} In Davids's first assignment of error, he argues that the trial court erred when it improperly removed Juror 5 for cause. Specifically, Davids argues that because Juror 5 explicitly stated that despite her cousin's experience with the prosecutor's office and subsequent incarceration, Juror 5 would be able to be impartial during Davids's trial.

{¶ 23} Criminal defendants are guaranteed the right to a trial by an impartial jury through Article I, Section 10 of the Ohio Constitution, as well as the due process clause of the Fourteenth Amendment and the Sixth Amendment to the United States Constitution. *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Due process requires "an impartial trier of fact — 'a jury capable and willing to decide the case solely on the evidence before it.'" *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), quoting *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶ 24} Peremptory challenges provide the state and defendants an opportunity to dismiss potential jurors for any reason, except for an impermissible

basis such as race or gender, without inquiry and without the trial court's approval. *See* Crim.R. 24(D); *see also State v. Reynolds*, 80 Ohio St.3d 670, 675, 687 N.E.2d 1358 (1998).

{¶ 25} Unlike peremptory challenges, challenges for cause permit the parties to reject jurors on narrowly specified bases that must be demonstrated in the record and found by the trial court. Crim.R. 24(C). A prospective juror may be challenged for cause if he or she demonstrates bias toward the defendant or the state. R.C. 2945.25(B); Crim.R. 24(C)(9). Further, pursuant to R.C. 2313.17(B)(9), a potential juror may be challenged for cause if the person "discloses by the person's answers that the person cannot be a fair and impartial juror or will not follow the law as given to the person by the court."

{¶ 26} Trial courts have broad discretion in determining a juror's ability to be impartial. *State v. Lloyd*, 8th Dist. Cuyahoga No. 109128, 2021-Ohio-1808, ¶ 17, citing *State v. Nields*, 93 Ohio St.3d 6, 20, 752 N.E.2d 859 (2001). "Resolution of the impartiality issue rests in large part on the trial court's assessment of the juror's credibility and demeanor, and the context in which the issue arises." *Id.*, citing *Skilling v. U.S.*, 561 U.S. 358, 386, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010); *State v. Williams*, 79 Ohio St.3d 1, 8, 679 N.E.2d 646 (1997). In light of this broad discretion, reviewing courts "will defer to the trial judge who sees and hears the juror." *Id.*, citing *Chang v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 82033, 2003-Ohio-6167, ¶ 6.

{¶ 27} We review the trial court's decision on whether to remove a juror for cause for an abuse of discretion. *State v. Smith*, 80 Ohio St.3d 89, 105, 684 N.E.2d 668 (1997). The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 28} Here, although Juror 5 stated that she could be impartial, she also indicated that she believed that her relative was treated unfairly by the same office that was prosecuting Davids. Juror 5 subsequently indicated that she did not believe that the law protected everyone equally. In its discussion with the parties following the state's challenge, the trial court indicated that based on Juror 5's cousin having been prosecuted by the same office that was prosecuting Davids, the seriousness of the offenses that her cousin was convicted of, taken together with her responses to voir dire questions, Juror 5 could not be impartial. Therefore, following a careful review of the voir dire record, we cannot conclude that the trial court's decision to remove Juror 5 for cause was unreasonable, arbitrary, or unconscionable. Because the trial court did not abuse its discretion, Davids's first assignment of error is overruled.

## II. Defense Counsel's Motion to Withdraw

{¶ 29} In Davids's second assignment of error, he argues that the trial court erred when it refused to allow Davids's trial counsel to withdraw. Specifically, Davids argues that the fact that he and his counsel contradicted each other in open

court about important matters such as communication and discovery indicates that the court's denial of counsel's motion and refusal to appoint new counsel was an abuse of discretion.

{¶ 30} The right to counsel of one's choice is an essential element of the Sixth Amendment right to have the assistance of counsel for one's defense. *State v. Frazier*, 8th Dist. Cuyahoga No. 97178, 2012-Ohio-1198, citing *State v. Keenan*, 8th Dist. Cuyahoga No. 89554, 2008-Ohio-807. Because this right is not absolute, however, courts have "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *Id.*, quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). Therefore, this court reviews a trial court's decision on a motion to withdraw as counsel for an abuse of discretion. *State v. Hall*, 8th Dist. Cuyahoga No. 108235, 2019-Ohio-5123, ¶ 8, citing *State v. Murphy*, 91 Ohio St.3d 516, 523, 747 N.E.2d 765 (2001).

{¶ 31} Here, the court conducted an extensive hearing on defense counsel's motion to withdraw and heard from both Davids and defense counsel. One of the primary issues cited by Davids and his defense counsel was communication issues. Specifically, counsel had not met with Davids in person when he was in custody for an extended period of time, and some of their attempts at virtual communications were beset with technical difficulties. Both of these issues were indirectly or directly a result of the ongoing COVID-19 pandemic, which the trial court noted were not issues that were exclusive to Davids's appointed counsel. Our review of the record

in this case reveals that the court conducted a meaningful hearing on the motion to withdraw and conducted a thorough inquiry into the claimed problems. Based on a careful review of the record, we cannot conclude that the court's denial of the motion to withdraw was in any way unreasonable, arbitrary, or unconscionable. Because the court did not abuse its discretion in denying the motion to withdraw, Davids's second assignment of error is overruled.

## III. Character Evidence

{¶ 32} In Davids's third assignment of error, Davids argues that the trial court erred when it allowed improper character evidence of Davids into the record at trial. Specifically, Davids argues that the court permitted various pieces of testimony regarding Davids's background, his reputation as a drug dealer, and a previous unpleasant encounter between Davids and Williams, all of which Davids claims violated the rules of evidence.

{¶ 33} The decision whether to admit or exclude evidence is subject to review under an abuse of discretion standard, and reviewing courts will not disturb evidentiary rulings absent a clear showing that the trial court abused its discretion and materially prejudiced a party. *State v. Barnes*, 8th Dist. Cuyahoga No. 104045, 2017-Ohio-383, ¶ 17, citing *State v. Lyles*, 42 Ohio St.3d 98, 99, 537 N.E.2d 221 (1989).

{¶ 34} Davids argues that the testimony regarding his reputation violated Evid.R. 401, 402, 403, and 404 because it was irrelevant to the charged conduct in this case and was more prejudicial than probative and referred to prior acts of

Davids — specifically, selling drugs and chasing Williams on a prior occasion — that was improperly used to show Davids's propensity to commit crimes.

{¶ 35} Evid.R. 401 defines "relevant evidence" as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 403 provides that while relevant evidence is generally admissible, it "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Further, Evid.R. 404(A) provides that evidence of a person's character is generally "not admissible for the purpose of proving action in conformity therewith on a particular occasion." Finally, Evid.R. 404(B) provides that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶ 36} Here, the witnesses' testimony as to the nature of their respective relationships with Davids was relevant. Fialko's testimony that she had known Davids for years was relevant to establish that she knew Davids and thus was easily and immediately able to identify him during the incidents on August 25 and 26. Her testimony that when Davids approached the house, she feared what was going to happen because of his reputation was relevant because it provided significant context as to why Davids approached the house and why the women reacted the way they did.

{¶ 37} Likewise, Williams's testimony that Davids had chased her approximately one week before the incident in this case is relevant because it established that the two had a previously existing relationship and that Davids's motive in breaking down the door of Fialko's house to chase Williams was related to an outstanding drug debt. The evidence was not presented to show that Davids was a violent person, had an otherwise poor character, or was acting in conformity with that character in this case.

{¶ 38} Finally, Clay's testimony regarding the nature of her relationship with Davids was relevant because it explained why she was driving Davids around. While evidence that Davids regularly sold drugs could certainly be prejudicial, "the rules of evidence do not attempt to bar all prejudicial evidence," but rather exclude only evidence that is unfairly prejudicial. *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 23. Here, the record reflects that the primary basis for the events that occurred on August 25 and 26, 2019, was that Williams owed Davids money for an outstanding drug debt. Given this context, evidence that Davids sold drugs was not unfairly prejudicial. Therefore, we cannot conclude that the trial court abused its discretion in permitting the aforementioned testimony.

{¶ 39} Moreover, even if the trial court had abused its discretion with respect to each piece of testimony Davids challenged in this appeal, the admission of this testimony was, at worst, harmless error. "Prejudicial evidence is harmless beyond a reasonable doubt, where the remaining evidence standing alone constitutes overwhelming proof of a defendant's guilt." *State v. Lutz*, 8th Dist.

Cuyahoga No. 80241, 2003-Ohio-275, ¶ 99, citing *State v. Williams*, 6 Ohio St.3d 281, 452 N.E.2d 1323. Here, the undisputed evidence in the record shows that Davids broke down the door of Fialko's house, chased Williams and Patricia through the house and onto the roof, shot at Williams, and subsequently shot Fialko twice, causing serious and permanent damage. Given the overwhelming evidence, any claimed error was harmless. Therefore, Davids's third assignment of error is overruled.

**IV. Merger**

{¶ 40} In Davids's fourth assignment of error, he argues that the trial court erred when it failed to merge Count 1, aggravated burglary, and Count 2, felonious assault. Specifically, Davids argues that these offenses were committed with the same animus because the commission of the felonious assault against Williams was ongoing before, during, and after the commission of the aggravated burglary, and therefore the two offenses were committed with the same animus.

{¶ 41} The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution prohibit a criminal defendant from being tried twice for the same offense and "prohibits 'the sentencing court from prescribing greater punishment than the legislature intended.'" *State v. Pendleton*, 163 Ohio St.3d 114, 2020-Ohio-6833, 168 N.E.3d 458, ¶ 8, quoting *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). R.C. 2941.25 was enacted so that if "'the same conduct by the defendant technically amounts to two or more related offenses, he should be guilty of only one

offense.'" *Id.*, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895

N.E.2d 149, ¶ 16, quoting Ohio Legislative Service Commission, Proposed Ohio

Criminal Code 308 (Mar. 1971).

{¶ 42} R.C. 2941.25 provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import or where his conduct results in two or more offenses of the same kind or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

The Ohio Supreme Court has clarified that "[i]n determining whether offenses are

allied offenses of similar import within the meaning of R.C. 2941.25, courts must

evaluate three separate factors – the conduct, the animus, and the import." *State

v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph one of the

syllabus. "Under R.C. 2941.25(B), a defendant whose conduct supports multiple

offenses may be convicted of all the offenses if any one of the following is true: (1)

the conduct constitutes offenses of dissimilar import, (2) the conduct shows that

the offenses were committed separately, or (3) the conduct shows that the offenses

were committed with separate animus." *Id.*, paragraph three of the syllabus.

Offenses are of dissimilar import "when the defendant's conduct constitutes

offenses involving separate victims or if the harm that results from each offense is

separate and identifiable." *Id.*, paragraph two of the syllabus.

{¶ 43} A defendant bears the burden of establishing his entitlement to the protection provided by R.C. 2941.25, and we apply a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination. *State v. Hazley*, 2d Dist. Montgomery No. 27107, 2016-Ohio-7689, ¶ 16, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶ 44} Davids was convicted of Count 1, aggravated burglary, in violation of R.C. 2911.11(A)(2), which provides in relevant part that

> [n]o person, by force, stealth, or deception, shall trespass in an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure any criminal offense, if the offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

Davids was also convicted of Count 2, felonious assault, in violation of R.C. 2903.11(A)(2), which provides in relevant part that "no person shall knowingly cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

{¶ 45} Here, Davids argues that the intent to cause physical harm to Williams existed before, during, and after the aggravated burglary relating to the forced entry into Fialko's home. The state argues that it is unclear whether Davids's intent in kicking down the door was to cause Williams physical harm or for some other purpose, such as robbing Williams of the money she owed him.

{¶ 46} Here, it was not appropriate to merge Counts 1 and 2 because each offense was committed with separate conduct and resulted in separate and

identifiable harms. The record reflects that Davids committed aggravated burglary when he kicked in the door of Fialko's home with the purpose to commit felonious assault, and Davids committed felonious assault when he chased Williams onto the roof and shot at her. Because these offenses are not allied offenses of similar import, Davids's fourth assignment of error is overruled.

## V. Reagan Tokes

{¶ 47} In Davids's fifth assignment of error, he argues that the trial court erred when it sentenced Davids to an indefinite sentence under the Reagan Tokes Law. Davids's arguments are overruled pursuant to this court's en banc decision in *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470, which overruled the challenges presented in this appeal to the Reagan Tokes Law enacted through S.B. 201. Therefore, we find that Davids's sentence pursuant to Reagan Tokes was not a violation of his constitutional rights. Davids's fifth assignment of error is overruled.

## VI. Firearm Specifications

{¶ 48} In his sixth assignment of error, Davids argues that the trial court erred when it imposed consecutive firearm specifications on all three firearm specifications. Davids acknowledges that the trial court was within its discretion to impose the firearm specifications consecutively, but it was only required to impose consecutive sentences on two of the three specifications. He further argues that because there is a question as to whether the trial court believed it was required to

impose all three specifications consecutively, the case should be remanded for "resentencing with clarification." We disagree.

{¶ 49} Here, Davids was convicted of felonious assault, and mandatory prison terms for firearm specifications were imposed pursuant to R.C. 2929.14(B)(1)(a). R.C. 2929.14(B)(1)(g) provides:

> If an offender is convicted or pleads guilty to two or more felonies, if one or more of those felonies are * * * felonious assault * * *, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

Further, R.C. 2929.14(C)(1)(a) provides in relevant part:

> Subject to division (C)(1)(b) of this section, if a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(a) of this section for having a firearm on or about the offender's person or under the offender's control while committing a felony * * * the offender shall serve any mandatory prison term imposed under [the] division consecutively to any other mandatory prison term imposed under either division or under division (B)(1)(d) of this section, consecutively to and prior to any prison term imposed for the underlying felony pursuant to division (A), (B)(2), or (B)(3) of this section or any other section of the Revised Code, and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender.

{¶ 50} Davids is correct that R.C. 2929.14(B)(1)(g) requires a court to impose consecutive sentences for two firearm specifications and provides that additional firearm specifications may be imposed consecutively under the court's discretion. His reliance on this section is misplaced, however, because R.C.

2929.14(B)(1)(g) applies only to felonies and specifications that are part of the same act or transaction. *State v. Gooden*, 8th Dist. Cuyahoga No. 109643, 2021-Ohio-1192, ¶ 19, citing *State v. Young*, 8th Dist. Cuyahoga No. 102202, 2015-Ohio-2862, ¶ 10. The three firearm specifications that were imposed on Davids in this case did not all arise from the same act or transaction. R.C. 2929.14(B)(1)(g) required the court to sentence Davids to three-year firearm specifications on Counts 1 and 2. Because Count 3 related to Davids's August 26 shooting of Fialko, R.C. 2929.14(C)(1)(a) required the court to impose that three-year firearm specification as well.

{¶ 51} Moreover, even if the court were not required to impose all three of the three-year firearm specifications as it did, Davids's argument that an open question as to whether the court was required to do so requires reversal is not well-taken. Davids is correct that this court has remanded a case for resentencing where the trial court's statements on the record indicate a belief that it is required by statute to impose consecutive sentences when it is not so required. *State v. James*, 2015-Ohio-4987, 53 N.E.3d 770, ¶ 44 (8th Dist.). Unlike in *James*, the court's statements here do not indicate a misunderstanding of the relevant law. Rather, the court outlined the arguments made by the parties in discussing potential sentences for Davids. For these reasons, Davids's sixth assignment of error is overruled.

**VII. Sentencing Journal Entry**

{¶ 52} In Davids's seventh assignment of error, he argues that the trial court's sentencing journal entry contains a clerical error. Specifically, Davids argues that the trial court's sentencing entry incorrectly states that the minimum sentence on the underlying offenses — aggravated burglary, felonious assault, and having a weapon while under disability — is 13 and a half years, instead of 13 years. The state concedes this error.

{¶ 53} The court's sentencing journal entry states, in relevant part:

> The court imposes a prison term of 9 year(s) on the firearm specification(s) to be served prior to and consecutive with a minimum prison term of 13 year(s), 6 month(s) and a maximum prison term of 25 year(s), 6 month(s) on the underlying offense(s).

Before and after this statement, the sentencing entry contains an accurate recitation of Davids's sentence.

{¶ 54} Davids's minimum sentence on the underlying offenses is 13 years, made up of the seven-year minimum sentence on Count 1 and the six-year sentence on Count 3, for a total minimum sentence of 13 years.

{¶ 55} Although a court speaks through its journal entries, clerical errors may be corrected at any time in order to conform to the transcript of the proceedings. *State v. Goines*, 8th Dist. Cuyahoga No. 105436, 2017-Ohio-8172, ¶ 35, quoting *State v. Lugo*, 8th Dist. Cuyahoga No. 103893, 2016-Ohio-2647, ¶ 3. Here, because the sentencing entry is inconsistent with the trial court's pronouncement of Davids's sentence on the record at the sentencing hearing, the

entry can be corrected through a nunc pro tunc entry to accurately reflect what occurred at sentencing and to eliminate the internal inconsistency. *Id.*, citing *State v. Wilson*, 8th Dist. Cuyahoga No. 102189, 2016-Ohio-379. Therefore, Davids's seventh assignment of error is sustained.

## VIII. Speedy Trial

{¶ 56} In Davids's eighth and final assignment of error, he argues that the trial court erred when it violated his right to a speedy trial. Specifically, Davids argues that the length of the delay amounts to a constitutional violation. In his brief, Davids acknowledges that his trial counsel's June 7, 2021 motion to dismiss based on speedy-trial grounds cited both statutory and constitutional arguments for dismissal, but "due to the existence of probation holders, court protocols approved by the Ohio Supreme Court regarding the pandemic, various pretrial motions, and multiple continuance entries which indicate continuances at the request of Defendant-Appellant, it does not appear there is a viable argument that [his] statutory right to a speedy trial was violated" but asserts that "[t]he issue of a constitutional violation remains." Davids points to the four factors laid out by the United States Supreme Court for courts to evaluate whether a defendant's constitutional right to a speedy trial was violated. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

{¶ 57} The four factors delineated in *Barker* are the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Id.* at 530. While the court listed these four factors, it also stated that

courts are compelled to approach speedy trial cases on an *ad hoc* basis, and the delineation of these four factors are merely "some of the factors which courts should assess." *Id.*

{¶ 58} Whether a trial court's ruling on a speedy-trial question was correct presents a mixed question of law and fact. *State v. Tuttle*, 8th Dist. Cuyahoga No. 110508, 2022-Ohio-303, ¶ 9, citing *State v. Borrero*, 8th Dist. Cuyahoga No. 82595, 2004-Ohio-4488, ¶ 10, citing *State v. Barnett*, 12th Dist. Fayette No. CA2002-06-011, 2003-Ohio-2014. Appellate courts apply a de novo standard of review to the legal issues but afford great deference to any findings of fact made by the trial court, if they were supported by competent and credible evidence. *Id.*, citing *State v. Barnes*, 8th Dist. Cuyahoga No. 90847, 2008-Ohio-5472, ¶ 17.

{¶ 59} Davids was arrested on September 7, 2019, and his trial was conducted in July 2021. According to Davids, the delay of over one year is sufficient to "give cause for concern." Davids further asserts that while the docket reflects that the majority of the continuances were at his own request, his trial counsel repeatedly suggested that she did not in fact request those continuances. While Davids concedes that trial counsel did not file a motion to correct the record, he nevertheless maintains that this should not work against him. Finally, Davids argues that the fact that he was jailed with no ability to post bond for almost two years before having an opportunity to challenge the charges against him at trial should be deemed presumptively prejudicial.

{¶ 60} While R.C. 2945.71 requires the state to bring a felony defendant to trial within 270 days of arrest, Davids has already conceded that he does not have a viable argument that this statutory speedy trial right was violated. Instead, he urges this court to consider the presumptively prejudicial delay and discharge him for a speedy-trial violation, or, in the alternative, remand the case for a hearing as to whether the continuances made at his request were actually made at the request of the defense. We decline to do so.

{¶ 61} Having reviewed the record, including the competing motions as to a claimed speedy-trial violation, and having considered the totality of the circumstances in this case, we overrule Davids's eighth assignment of error.

{¶ 62} Judgment affirmed and case remanded for the limited purpose of issuing a nunc pro tunc entry in accordance with this opinion.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for the issuance of nunc pro tunc entry and execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

LISA B. FORBES, J., CONCURS;
SEAN C. GALLAGHER, A.J., CONCURS IN JUDGMENT ONLY WITH SEPARATE OPINION


SEAN C. GALLAGHER, A.J., CONCURRING IN JUDGMENT ONLY:

{¶ 63} Although I concur with the majority's resolution of this appeal, I would limit our analysis solely to the assigned errors as presented, which generally lack a full and complete discussion of the relevant law. App.R. 16(A)(7). Most of the assigned errors are conclusions with respect to the outcome, with limited analysis and supporting authority presented in support.

{¶ 64} An appellant bears the burden of demonstrating reversible error, beyond providing conclusory statements. *In re 6011 Greenwich Windpark, L.L.C.,* 157 Ohio St.3d 235, 2019-Ohio-2406, 134 N.E.3d 1157, ¶ 33, citing *Toliver v. Vectren Energy Delivery of Ohio, Inc.,* 145 Ohio St.3d 346, 2015-Ohio-5055, 49 N.E.3d 1240, ¶ 30. It is not this court's obligation to provide analysis and a complete discussion of the standard of review for any given assigned error. *State v. Quarterman,* 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19, quoting *State v. Bodyke,* 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part) ("[A]ppellate courts do

not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them."). For this panel to supplement those arguments with necessary analysis, even if inclined to reverse any of the convictions, would deprive the state any meaningful opportunity to respond to the newly formed analysis. *State v. Tate,* 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 21, quoting *State v. 1981 Dodge Ram Van*, 36 Ohio St.3d 168, 170, 522 N.E.2d 524 (1988) ("[A]ppellate courts should not decide cases on the basis of a new, unbriefed issue without 'giv[ing] the parties notice of its intention and an opportunity to brief the issue.'").

{¶ 65} Because none of the assigned errors have demonstrated error, I concur with the judgment of the majority.